UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------x
            :
SUPERIOR PLUS US HOLDINGS, INC., :
            :
       Plaintiff,  :  13 Civ. 7740 (TPG)
            :
    – against –   :  **<u>OPINION</u>**
            :
SUNOCO, INC. (R&M) and SUNOCO, :
INC.,           :
            :
      Defendants. :
------------------------------------------------x

The present case involves a contractual dispute over the 2009 sale of an onshore oil-storage facility located at 9678 River Road, Oneida County, New York (the "Marcy Terminal"). The purchaser, plaintiff Superior Plus US Holdings, Inc. ("Superior"), now moves for summary judgment on liability, contending that defendants Sunoco, Inc. (R&M) and Sunoco, Inc. (collectively, "Sunoco") breached the representations and warranties made about the Marcy Terminal at the time of sale.

Superior argues that it is entitled to summary judgment based on Sunoco's violation of three contractual provisions: (1) Section 2.2 of the Environmental Agreement, which warrants that the Marcy Terminal complied with all applicable environmental laws; (2) Section 4.4 of the Asset Purchase Agreement ("APA"), which represents that Sunoco was in compliance with all laws to which the Marcy Terminal was subject; and (3) Section 2.5 of the Environmental Agreement, which states Sunoco was not aware of any anticipated environmental

1

compliance costs.  As a result of those violations, Superior alleges that it is entitled to indemnification based on the APA's express indemnification clause.

For the following reasons, the court grants Superior's motion for summary judgment based on section 2.2 of the Environmental Agreement.  Section 4.4 of the APA and section 2.5 of the Environmental Agreement are not grounds for summary judgment.

## Statement of Facts

From 1988 to 2009, Sunoco owned and operated the Marcy Terminal pursuant to Major Petroleum Facility License No. 61440 (the "Marcy Terminal License").  Six of the oil storage tanks located at the Marcy Terminal—tanks 104, 106, 112, 113, 114, and 115 (the "modified tanks")—were originally constructed with bare steel bottom plates that made direct contact with the soil below.  (Decl. of Christine A. Fazio, dated Dec. 13, 2013, ("Fazio Decl.") Ex. F.)  They were what are known as single-bottom tanks.  (Id.)  However, during the 1990s, Sunoco modified the tanks by installing new bottoms on top of the existing bottoms.

### A. The Contractual Representations and Warranties

On September 2, 2009, Sunoco sold the Marcy Terminal, along with other assets, to Superior for $82.5 million.  Sunoco and Superior executed two agreements in connection with the sale: the APA and the Environmental Agreement.  Both agreements were signed on September 2, 2009.  The APA and

Environmental Agreement make several representations and warranties about the Marcy Terminal's compliance with existing laws and regulations.

Superior argues that Sunoco breached 3 separate contractual warranties, each of which provides independent grounds for summary judgment: (1) section 2.2 of the Environmental Agreement; (2) section 2.5 of the Environmental Agreement; and (3) section 4.4 of the APA.

### 1. Section 2.2 of the Environmental Agreement

Section 2.2 of the Environmental Agreement states:

> Seller's operation of the Transferred Business complies in all material respects with all applicable Environmental Laws. Seller has all material permits, licenses, and other authorizations required pursuant to the Environmental Laws for the operation of the Transferred Business ("Environmental Permits"). All such Environmental Permits are valid and have not expired, been revoked or withdrawn, and the operation of the Transferred Business is in compliance in all material respects with all terms and conditions thereof. . . .

(Id. Ex. B.)

One of the key licenses with which § 2.2 warrants compliance is the Marcy Terminal License. Significantly, General Condition No. 5 of the Marcy Terminal License states that "[m]ajor additions, changes or rehabilitation in the structures or equipment of the onshore major oil facility which would materially affect the potential for a petroleum discharge. . .must be approved in advance by the Department." (Id. Ex. D.)

### 2. Section 4.4 of the APA

Section 4.4 of the APA states:

3

> Seller is in compliance in all material respects with all Laws to which the Business is subject, and Seller has not received written notice of noncompliance or violation in any material respects with (i) any Law to which the Business is subject; nor (ii) any authorizations or Permits that are Related to the Business.

(Fazio Decl. Ex. A.)

### 3. Section 2.5 of the Environmental Agreement

Section 2.5 of the Environmental Agreement states: "To Seller's Knowledge, there are no anticipated material Environmental Compliance Costs with respect to the Business." (Id. Ex. B.)   The APA defines Sunoco's knowledge as "the knowledge (in each case assuming discharge of his/her duties in a reasonably professional manner) of [Boyd E. Foster, Larry P. Fioretto, Barry J. Thomas, Robert F. Young, and John DeCarr]."   (See id. Ex. A.)

### B. The Indemnification Clause

The APA also contains an indemnification clause.  Section 9.2 of the APA states:

> Subsequent to the Closing and subject to Section 9.1, Seller shall defend, indemnify and hold harmless Purchaser and Purchaser's Affiliates, and each of their respective officers, directors, Affiliates, shareholders, members, partners, agents, employees and attorneys…from and against any and all liabilities, losses, damages, claims, costs and expenses, interest, awards, judgments and penalties (including, reasonable attorneys' and consultants' fees and expenses) suffered or incurred by them…arising out of or resulting from:
>
> (a) The breach of any representation or warranty made by the Seller contained in this Agreement, the Ancillary Agreements or any other documents executed in connection herewith.

(Id.)

4

**C. The Notice of Violation and Consent Order**

On October 20, 2012, Superior observed a leak coming from one of the modified tanks and reported the leak to the New York State Department of Environmental Conservation (the "Department"). On December 13, 2012 and December 21, 2012, the Department conducted inspections of the Marcy Terminal. (See id. Ex. F.) Based on the inspections, the Department sent Superior a Notice of Violation (the "NOV") regarding the Marcy Terminal on December 27, 2012. (See id.)

The NOV contains several findings pertaining to the modified tanks, stating:

- The most significant violations are related to regulations for tank construction found in 6 NYCRR Part 614 and proper installation, leak detention, operation, inspection, and maintenance of the secondary containment and cathodic protection systems.
- Tank Numbers 104, 106, 112, 113, 114, and 115. . .have been retrofitted with double bottoms…a substantial number of violations related to this work exist.
- The installation of a double bottom is defined in regulation as a 'substantial modification'.
- The Department's inspection revealed that in all but one case, the bottoms were not properly designed and installed with outlets for the leak detection system between the primary and second bottoms.
- . . .proper notice of the substantial modification was not provided to the Department.
- All tanks listed are in violations of Part 614.

(Id.)

5

Additionally, the NOV discusses violations on the part of Superior.  The NOV states: "It appears that the [cathodic protection] system has not been operated in compliance for quite some time, potentially allowing corrosion to occur...Based on the results of this inspection, additional tank repair may be necessary." (Id.)  The NOV directs Superior to suspend operations and perform corrective action or permanently shut down the Marcy Terminal.  (Fazio Decl. Ex. F.)

Keith Wrisley, the President of Superior, emailed the NOV to Boyd Foster of Sunoco on the day it was received.  (See Decl. of Keith Wrisley, dated Dec. 13, 2013, ("Wrisley Decl.") Ex. A.)  Superior then filed a Freedom of Information Law ("FOIL") request with the Department and received a copy of its file on the Marcy Terminal.  (See Fazio Decl. Ex. H.)  The file neither contains nor references any approval by the Department of the modifications made to the tanks referred to the modified tanks.  (See id.)  Furthermore, the Department affirmatively confirmed that it had not received advanced notice of the modifications made by Sunoco and that it never approved the modifications.  (See id. Ex. M.)

Superior entered into a consent order and an amended consent order with the Department, dated January 31, 2013 and September 17, 2013, respectively. (See id. Exs. N, S.)  Superior agreed to suspend operations and perform corrective actions.  (See id. Ex. N.)  The amended consent order requires Superior to perform the corrective actions by September 1, 2014. (See id. Ex. S.)

On February 14, 2013, Superior sent Sunoco a written demand for indemnification.  Superior's letter advises Sunoco "that Superior. . .hereby

6

claims indemnification from Seller for certain environmental matters discovered at its Major Oil Storage Facility located at 9754 River Road, Marcy, New York. . . ." (Fazio Decl. Ex. O.)   Superior requests Sunoco "agree to install or modify, (or agree to reimburse to the Purchaser the reasonable cost of installing or modifying), the above ground tanks, cathodic protection and secondary containment to comply with all Environmental Laws and Permits."   (Id. Ex. O.) By letter dated March 14, 2013, Sunoco "respectfully declines Superior's request." (Id. Ex. P.)

## Discussion

### A. Summary Judgment Standard

The standard governing motions for summary judgment is well-settled. A court may grant summary judgment only when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Cartrett, 477 U.S. 317, 322 (1986).  To defeat a motion for summary judgment, the nonmoving party must set forth "concrete particulars" to show that a trial is needed and may not rest upon mere conclusory allegations or denials.  Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co., 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007).

### B. The Contractual Representations and Warranties

Superior alleges that Sunoco breached three warranty provisions: section 2.2 of the Environmental Agreement, section 4.4 of the APA, and section 2.5 of the Environmental Agreement.  Thus, Superior claims, those violations trigger the express indemnification provision contained in § 9.2 of the APA.

### 1. Section 2.2 of the Environmental Agreement

Superior alleges that Sunoco breached its warranty under section 2.2 of the Environmental Agreement because Sunoco modified the tank bottoms without receiving advanced approval from the Department.  Although one might expect Superior to present a detailed discussion of the defective modifications discussed in the NOV, Superior bases its claim under § 2.2 on Sunoco's failure to obtain advanced approval of the modifications.

In section 2.2 of the Environmental Agreement, Sunoco warrants that the Marcy Terminal was in compliance with all material terms and conditions of its "environmental permits," including the Marcy Terminal License.  General Condition No. 5 of that license requires all major changes to the facility be "approved in advance by the Department." (Id. Ex. D.) The parties do not dispute that the tank-bottom modifications constitute major changes under the Marcy Terminal License.  Therefore, Sunoco required approval from the Department prior to making those modifications.

There is no question regarding whether Sunoco received advanced approval to modify the tank bottoms.  Clearly, Sunoco did not.  A review of the Marcy Terminal file does not produce any documents from the Department that

suggest it approved the modifications.  Moreover, the Department confirmed in writing that it had not received advanced notification of the tank modifications and did not approve those modifications.  (See id. Ex. M.)

In response, Sunoco points to correspondences with the Department which reference the modifications.  However, General Condition No. 5 does not require Sunoco to merely notify the Department about changes—it requires those changes be "approved in advance."  Although some documents suggest that the Department may have been aware that some modifications were made, the Department's failure to object does not amount to actual approval.

### i.   Sunoco's Defenses

Sunoco raises several issues in its defense.  First, Sunoco argues the Department's finding that the tanks were "double bottomed" and in violation of state environmental laws is arbitrary and capricious and thus not entitled to deference."  Second, Sunoco claims it cannot not be held liable because the defense of laches would preclude the Department from alleging a violation.  Third, Sunoco contends that Superior did not comply with the notification requirements of Section 9.4 of the APA, and therefore Sunoco was prejudiced by the consent decree.  Fourth, Sunoco argues that summary judgment is not appropriate at this stage because the parties have not completed discovery.

None of Sunoco's defenses have merit.   The Department's findings are entitled to deference because the New York Court of Appeals has made clear that "the interpretation given to a regulation by the agency which promulgated it and

is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable." <u>Council of the City of N.Y. v. Pub. Serv. Comm'n</u>, 99 N.Y.2d 64, 74 (2002); <u>see also</u> <u>Brentwood</u>, 508 F. Supp. at 290.  The Department may not have cited Sunoco for the violations while it owned the Marcy Terminal but that does not mean the violations did not exist at that time. Although Sunoco tries to distinguish tanks that have a "new bottom on top of the existing bottom" from tanks with "double bottoms," Sunoco has not identified any Department regulation or guidance document that recognizes such a distinction.

Additionally, the defense of laches has no merit as a matter of law when asserted against a municipality.  See <u>Clear Channel Outdoor, Inc. v. City of New York</u>, 594 F.3d 94, 111 (2d Cir. 2010); <u>F.T.C. v. Verity Int'l, Ltd.</u>, 194 F. Supp. 2d 270, 286 (S.D.N.Y. 2002).

Superior also provided sufficient notice of the meeting with the Department under the APA, and therefore Sunoco was not prejudiced by the consent order.

Section 9.4(a) of the APA states:

> Upon receipt by the Indemnified Party of notice from a Third Party of any action, suit, proceeding, claim, demand or assessment against such Indemnified Party...the Indemnified Party shall promptly give written notice thereof to the Indemnifying Party indicating the nature of such Third Party Claim and the basis therefore.

(Fazio Decl. Ex. A.)  Although Superior did not extend Sunoco a formal invitation to attend the meeting, it provided notice of the time and date of the meeting as well as a copy of the NOV.  If Sunoco thought it had valid defenses then it needed

to raise those issues at the meeting with the Department—not only after Superior entered into a consent order and brought suit against Sunoco.

Finally, while summary judgment motions are usually reserved until after discovery, here, summary judgment is appropriate at this early stage. The contractual dispute is purely a question of law, and Sunoco fails to identify any information that might put a material fact in dispute. Additionally, the Department set a September 1, 2014 deadline for corrective action if Superior intends to continue operating Marcy Terminal. The court need not wait until lengthy discovery has concluded when it now possesses all the material facts.

## 2. Section 4.4 of the APA

Superior also alleges that it is entitled to indemnification because Sunoco breached its warranty that the Marcy Terminal was in compliance with all applicable laws under section 4.4 of the APA. Specifically, Superior argues that Sunoco breached section 4.4 for two reasons: (1) the modifications Sunoco made to the oil-storage tanks are not up to the standards required by 6 NYCRR Part 614 and (2) Sunoco did not receive advanced approval from the Department for those modifications.

Both the inadequacy of the modifications under existing environmental regulations and the lack of approval for those modifications violate section 4.4 of the APA. However, as Sunoco argues, section 2.7 of the Environmental Agreement has the effect of eliminating section 4.4 of the APA as a basis for

11

indemnification. (See Opp. at 10.)  Section 2.7 of the Environmental Agreement states:

> Purchaser acknowledges and agrees that Seller's representations and warranties as set forth in Section 2.1 through Section 2.6 herein and Section 4.5 and 4.10 of the Asset Purchase Agreement shall be the Seller's exclusive representations and warranties in this Agreement and in the Asset Purchase Agreement with respect to environmental matters.

(Fazio Decl. Ex. B.)

Given that the Department of Environmental Conservation notified Superior of these violations of state environmental law, the court interprets this issue as an "environmental matter."  Superior does not contest that this dispute involves environmental matters and appears to concede this argument in its reply brief.  Therefore, even though the violations Superior alleges constitute violations of section 4.4, that provision is not valid basis for indemnification under the APA's express indemnification clause.

Because Sunoco bases its summary judgment claim on the APA's express indemnification clause, section 4.4 of the APA is not a valid ground for awarding summary judgment.

### 3. Section 2.5 of the Environmental Agreement

Superior also alleges that Sunoco breached section 2.5 of the Environmental Agreement because Sunoco knew or should have known that the Marcy Terminal's noncompliance with existing regulations would lead to environmental compliance costs.

The alleged breach of section 2.5 cannot sustain an award of summary judgment because there is a genuine dispute regarding whether Sunoco had knowledge of future environmental compliance costs.  Without discovery, the court cannot determine what Sunoco's officers knew or should have anticipated given the reasonably professional discharge of their duties.  Sunoco's "knowledge" is a material fact in this case because Sunoco's knowledge forms the basis of liability under this provision.

Given that there are material facts at issue, section 2.5 of the Environmental Agreement is not an appropriate basis for summary judgment.

## C. The APA's Indemnification Provision

Superior asserts it is entitled to indemnification as result of Sunoco's violations under the express indemnification clause contained in section 9.2 of the APA.

Sunoco explicitly agrees to indemnify Superior for liability caused by Sunoco's breach of a representation or warranty contained in the APA or the Environmental Agreement.  By failing to obtain advanced approval of the tank bottoms, Sunoco violated section 2.2 of the Environmental Agreement. Accordingly, Superior is entitled to indemnification.

Under section 9.5(a) of the APA, the maximum indemnification amount is five percent of the purchase price.  (See id. Ex. A.)  The purchase price was $82.5 million.  (See id.)  Thus, the maximum indemnification Sunoco could be required to pay is $4.125 million.  However, at this time, Superior has only moved for

summary judgment on liability, so the court need not determine the indemnification award at this time.

## Conclusion

Sunoco breached the warranties made in section 2.2 of the Environmental Agreement, and thus Superior is entitled to indemnification under section 9.2 of the APA.   Accordingly, the court grants Superior's motion for summary judgment.   The court directs the parties to submit briefing on the amount of indemnification to which Superior is entitled.

This opinion will resolve the motion located at Doc. No. 6.

14

SO ORDERED.

Dated:  New York, New York
        May 30, 2014

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/2/2014

15